**CALASKA PARTNERS, L.P.**

v.

**Catherine DAHL.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 24, 1996.

Decided May 17, 1996.

William H. Leete, Paul D. Pietropaoli, Leete & Lemieux, Portland, for Plaintiff.

Mark Perry, Bangor, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Catherine Dahl, formerly Catherine Hanson, appeals from the judgment entered in the Superior Court (Washington County, *Romei, J.*) denying her M.R.Civ.P. 60(b) motion for relief from the judgment of foreclosure and sale previously entered against her. Catherine contends that, because two personal guarantees purporting to obligate her for monies loaned to and defaulted on by Hanson Trucking, Inc. contain forgeries of her signature, the court should have relieved her from the judgment. Finding no error or abuse of discretion, we affirm the judgment.

On October 16, 1987, Catherine, Michael Hanson, then her husband, and Hanson Trucking executed a mortgage and security agreement in favor of Maine National Bank for a principal sum of $195,000. The agreement contained a clause that secured future advances made to the corporation, or Michael or Catherine. The corporation, with Michael Hanson signing as president, borrowed additional amounts from Maine National in excess of $300,000.

On February 10, 1989, and on January 2, 1990, the present and future indebtedness of . Hanson Trucking was guaranteed by personal guarantees executed by Michael and purportedly by Catherine. The guarantees referenced as security the October 1987 mortgage that included real estate in Northfield that Catherine owned prior to her marriage to Michael. The notes were defaulted.

Calaska Partners, the assignee of the notes and mortgage,[1] filed a complaint for fore-

1. Maine National Bank was declared insolvent in early 1991 and the FDIC was appointed receiver.

Eventually, Calaska became the assignee of some

closure against Catherine and Michael Hanson, and Hanson Trucking. Attached to the complaint were copies of the mortgage, the notes, and the February 1989 guaranty that contains Catherine's signature that she contends is forged. Although the complaint, its attachments, and the summons were served personally on Catherine on August 16, 1994, no answer to the complaint was filed. Catherine also received notice of Calaska's November 3, 1994 application for a default against her, but did not move to set aside the default that was entered on November 7, 1994. A judgment of foreclosure and sale, entered on January 24, 1995, reflects the court's conclusion that the notes were in default, that Michael Hanson and Catherine were in default pursuant to the February 10, 1989 guaranty, and that the total amount due pursuant to the notices and the guaranty was $484,926.96. The judgment further provided that Calaska had the right to sell the real estate set out in the mortgage if the amount due was not paid within ninety days.

On June 1, 1995, Catherine filed a motion for relief from the judgment on the grounds that, although she admits signing the October 16, 1987 mortgage and agreement, the loans originally secured by that mortgage have since been paid, she signed none of the subsequent promissory notes, and her signature on the guarantees are forgeries. This appeal by Catherine followed the denial of her motion.

Catherine pursues relief under M.R.Civ.P. 60(b)(6).[2] She contends that because the signatures appearing on the guarantees are obvious forgeries, it would be manifestly unjust for Calaska to benefit from those forgeries by virtue of the foreclosure judgment. Accordingly, she argues, the court should have granted her relief. We are unpersuaded by Catherine's contentions.

■ We review the denial of a motion for relief from judgment for clear error or abuse of discretion. *Scott v. Lipman & Katz, P.A.,*

648 A.2d 969, 972 (Me.1994) (citation omitted). The fraud that Catherine alleges led to the foreclosure judgment against her is not something that arose during the course of this litigation or that has recently come to her attention. A copy of the personal guaranty on which part of Catherine's liability is based, containing what she contends is an obvious forgery, was served on her along with the complaint and summons in August of 1994. She acknowledges that she received copies of the documents and forwarded them to her attorney in Maine who was representing her in her divorce action against Michael Hanson. She also acknowledges receipt of a copy of the application for default against her, which she also forwarded to her attorney. No answer or other responsive pleading, however, was ever filed. Indeed, Catherine never challenged the validity of any of the documents, nor did she contest her liability in any way until the Rule 60(b) motion for relief was filed more than nine months after she was served with the complaint and summons and copy of the guaranty, and more than six months after she knew of Calaska's application for a default against her.

■ Catherine has advanced no reason for her attorney's failure to respond to the complaint or to seek to set aside the default. It is well established that the attorney's actions are to be regarded as the actions of the client, *Moulton v. Brown,* 627 A.2d 521, 523 (Me.1993); *Mockus v. Melanson,* 615 A.2d 245, 247 (Me.1992), and Catherine has shown no excuse for his neglect in failing to file the required responsive pleadings. Catherine correctly points out that she is seeking relief pursuant to Rule 60(b)(6) as opposed to Rule 60(b)(1), and that Rule 60(b)(6) does not require that there be a showing of excusable neglect. *Coastal Sav. Bank v. Brooks,* 578 A.2d 1174, 1176 (Me.1990). Rule 60(b)(6) does, however, impose on Catherine a burden to show a compelling reason as to why relief should be granted.

---

of the assets, including the Hanson notes and mortgage.

**2.** M.R.Civ.P. 60(b) provides in pertinent part:
  On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.

Liability should not be incurred on the basis of documents that contain forged signatures. Such facts undoubtedly can constitute manifest injustice justifying relief pursuant to Rule 60(b)(6). The person seeking such relief, however, must be vigilant in protecting her rights and seeking the relief. Rule 60(b) " 'presupposes that a party has performed [her] duty to take legal steps to protect [her] own interest in the original litigation.' " *Salenius v. Salenius,* 654 A.2d 426, 428 (Me.1995) (quoting *Reville v. Reville,* 370 A.2d 249, 254 (Me.1977)). " '[Rule 60(b) ] is not intended as an alternative method of appeal.' " *Id.* (quoting *Kolmosky v. Kolmosky,* 631 A.2d 419, 421 (Me.1993)). Here, Catherine was fully aware in August 1994, at the latest,[3] that Calaska was relying on the personal guaranty in seeking to hold her liable. She was notified again in November 1994, that a default against her was being sought. It was not until June 1995, over four months after judgment had been entered against her, that she moved for relief from that judgment. In view of those circumstances, the court did not err in concluding that Catherine had failed to show that the judgment resulted in manifest injustice to her, and acted within its considerable discretion in denying the Rule 60(b)(6) relief.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** Calaska contends, and Catherine does not dispute the contention, that in May of 1994, it notified Catherine in a demand letter of her liability for the debt based on the guaranty.